## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GOYA FOODS, INC.,

                Plaintiff,

    v.

NORMA GAYA,

    Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Goya Foods, Inc. (hereinafter, "Plaintiff" or "Goya"), by and through its undersigned counsel, as and for its Complaint against Defendant Norma Gaya ("Defendant"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil action for trademark infringement, trademark dilution and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New Jersey statutory and common law, for the damage Plaintiff will incur if Defendant is able to continue to use and register the trademark GAYA (the "GAYA Mark").

2.    On information and belief, Defendant is an individual who uses the GAYA Mark in the marketing, advertising, and/or sale of "vanilla beans, vanilla extract, vanilla paste, vanilla powder, processed vanilla for seeds for use as flavorings, vanilla flavorings for food or beverages" (the "Vanilla Goods") in U.S. commerce, including on Amazon.com.

3.    Given the similarities between the parties' marks, consumers are likely to confuse the GAYA Mark with the GOYA Marks (as hereinafter defined) and/or mistakenly believe that goods associated with the GAYA Mark are made, approved, or licensed by Plaintiff.  Defendant's use of the GAYA Mark therefore conflicts with Plaintiff's rights based on trademark infringement, trademark dilution and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and

New Jersey statutory and common law. Moreover, Plaintiff should be awarded equitable and monetary relief based on Defendant's willful violations of Plaintiff's rights.

## THE PARTIES

4.     Goya is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business at 350 County Road, Jersey City, New Jersey 07307. Goya is a leading and premier source for authentic Latino cuisine and is the largest Hispanic-owned food company in the United States.

5.     On information and belief, Defendant is an individual residing in Texas, and the GAYA Application (as hereinafter defined) lists Defendant's address as 8302 Winecup Hill, San Antonio, Texas 78256.

6.     On information and belief, Defendant controls and directs the use of the GAYA Mark and Defendant filed the GAYA Application. Moreover, Defendant personally participated in the wrongful acts alleged herein.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction in this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because the action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  The Court has supplemental jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367 because those claims are so related to the claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, that they form part of the same case and controversy under Article III of the United States Constitution.  Jurisdiction over the state law causes of action is also proper under 28 U.S.C. § 1338(b) because claims of unfair competition are joined with substantial and related claims under the Lanham Act.

8.     On information and belief, Defendant advertises and sells her products and conducts business throughout the United States, including transacting business on a regular, continuous and systematic basis in the State of New Jersey with consumers located in New Jersey, by, *inter alia*, advertising, selling and shipping products displaying the GAYA Mark to the State of New Jersey through online retailers such as Amazon.com, subjecting her to personal jurisdiction

in the State of New Jersey.  On information and belief, Defendant also directly targets residents of New Jersey with the knowledge that Defendant will interact with those residents through the sale of products via websites like Amazon.com.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because, on information and belief, the events giving rise to this action occurred, and continue to occur, within this district by way of Defendant's advertising, selling and shipping products displaying the GAYA Mark to the State of New Jersey.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.   Plaintiff Goya

#### A.  Goya's Storied History

10.     As Plaintiff proudly and conspicuously promotes on its website, www.goya.com, Don Prudencio and Carolina Casals founded Plaintiff's predecessor company in 1936 in Manhattan after immigrating to the United States from Spain (via Puerto Rico).

11.     Over the next 84 years, Plaintiff's GOYA brand grew from its humble beginnings on Duane Street in Lower Manhattan to become what it is today:  the largest Hispanic-owned food company in the United States, and a world-leading source of high-quality, affordable Latin cuisine products.

12.     Plaintiff and its GOYA brand are widely revered for their contributions to society. For example, in 2011, President Barack Obama honored Plaintiff for its continued success and commitment to the Hispanic community in the United States, making Plaintiff the only company honored by the former President.

#### B.  Goya's Famous Trademarks

13.     Since the 1930s, Plaintiff has invested billions of dollars in building its GOYA brand and turning the GOYA brand into one of the most recognized brands in the United States.

14.     Goya is engaged in the manufacture, distribution and sale in interstate commerce of high-quality foods, food preparation products and beverages, among other things. These products are sold throughout the United States almost everywhere that food and beverage products

are sold including in supermarkets, better food stores, convenience stores, mass market stores, wholesale clubs and over the Internet.

15.     As a result of the exclusive and extensive use, promotion, and advertising of the inherently distinctive GOYA Marks, these marks have become well-known to the trade and to the general consuming public of the United States and have accordingly acquired significant goodwill and fame.  The GOYA Marks identify and distinguish Goya's goods from the goods of others and identify the source and origin thereof to both the trade and the public.

16.     Plaintiff currently offers over 2,500 GOYA-brand Latin-cuisine products throughout the world, including, for example, spices; seasonings; marinades; soups; beans; grains; rice; beverages; confectionaries; snacks; and cookies.

17.     One of Plaintiff's most successful line of products is its GOYA-branded seasoning products, which are used in cooking and baking to add flavor and color to soups, stews, sauces, rice, beans, and more.

18.     The fame of the GOYA Marks long predates any use by Defendant of the GAYA Mark and predates Defendant's filing of the GAYA Application.

19.     Because of Plaintiff's longstanding, continuous use of its GOYA marks in the United States, American consumers widely recognize "GOYA" as solely and exclusively identifying Plaintiff.

20.     In addition to the GOYA Marks, for decades, Plaintiff has been continuously offering its vast array of goods and services to consumers throughout the world under GOYA-formative marks, including:

   a.     "…IF IT IS GOYA IS HAS TO BE GOOD" (U.S. Reg. No. 3,001,516);

   b.     "IF IT'S GOYA … IT HAS TO BE GOOD!" (U.S. Reg. No. 4,895,915);

   c.     "IF IT'S GOYA IT HAS TO BE GOOD… AND GOOD FOR YOU!" (U.S. Reg. No. 6,037,457);

   d.     "SI ES GOYA TIENE QUE SER BUENO" (U.S. Reg. Nos. 1,122,501; 4,210,054; 4,283,059 and 5,275,484);

e.    "GOYA FOR KIDS" (U.S. Reg. Nos. 4,724,087 and 4,440,791);

f.    "LA COCINA GOYA" (U.S. Reg. Nos. 2,735,075; 4,097,240; 4,097,241; 4,462,937 and 4,462,955);

g.    "FOR BETTER MEALS TURN TO GOYA" (U.S. Reg. Nos. 2,155,280; 2,155,281 and 2,169,948);

h.    "JOYAS DE GOYA" (U.S. Reg. Nos. 1,857,320; 1,859,228 and 1,860,499); and

i.    "GOYA OH BOY-A" (U.S. Reg. Nos. 1,395,064 and 4,895,794) (collectively, the "GOYA-Formative Marks").

21.    The GOYA Marks and the GOYA-Formative Marks are referred to hereinafter collectively as the "Family of GOYA Marks."

22.    Over the past three-quarters of a century, Plaintiff has expended (and continues to spend) hundreds of millions of dollars on advertising, marketing, and promoting its vast array of goods and services to consumers throughout the world under its Family of GOYA Marks.

23.    The vast array of goods and services that Plaintiff offers under its Family of GOYA Marks has enjoyed enormous commercial success throughout the world. Indeed, goods and services offered under Plaintiff's Family of GOYA Marks enjoy annual sales of $1.5 billion.

24.    Products featuring the Family of GOYA Marks have regularly received unsolicited media coverage and consumer reviews.

25.    In 2011, Goya's executives presented President Obama with a copy of *If It's Goya It Has To Be Good: 75 years of history* during a celebration at the White House, where President Obama praised Goya for its contributions to Hispanic communities throughout the United States.

26.    As an additional example of the fame of Plaintiff's Family of GOYA Marks and brand, in July 2015, the Smithsonian's National Museum of American History curated an exhibit titled *Inventing in America*. The exhibit included famous American brands and trademarks. Notably, the Smithsonian's curators selected a product featuring Plaintiff's GOYA Mark for

inclusion within the exhibit, alongside other products bearing famous, household brands, such as UPS, COCA-COLA, and the AMERICAN RED CROSS.

27.     As another example, the Family of GOYA Marks prominently appeared on the cover of author Guillermo A. Baralt's book, If It's Goya It Has To Be Good: 75 years of history:



28.     Because of Plaintiff's longstanding, continuous use of the Family of GOYA Marks, as well as Plaintiff's extensive advertising, marketing, and promotional efforts concerning goods and services offered under the Family of GOYA Marks, and the commercial success and widespread media coverage and acclaim of goods and services offered under Plaintiff's Family of GOYA Marks, the Family of GOYA Marks are famous among consumers in the United States.

**C.  Plaintiff's Federal Trademark Registrations**

29.     Goya owns the following valid and subsisting U.S. federal trademark registrations for the GOYA Marks, among others, in connection with a broad array of food products. *See* Table 1, below.

**Table 1**: Exemplary U.S. Federal Trademark Registrations for the GOYA Marks

| Mark | Reg. No. | Selected Goods | Date of Registration |
|------|----------|----------------|----------------------|
| GOYA*[1] | 764,033 | IC 29 & 30: "coffee, and edible olive oil" | January 28, 1964 |
| GOYA* | 962,193 | IC 29, 30 & 32: "beef stew, Vienna sausage, canned fruit juices, cereal, corn meal, hominy, crackers, edible oils, corn oil, olive oil, fruit syrup, grape juice, jellies and preserves, mayonnaise, olives, rice, soups, spaghetti, spices, salt, pepper, oregano, vinegar, flavoring extracts, meat sauce, sweet chocolate, tomato sauce, cheese, cream of coconut, canned vegetables, papaya nectar, peach nectar, guava nectar, spaghetti and meat balls, meat sauce and condiment, breadfruit; prepared sea food-namely, shrimp, spiced shrimp, and canned fish, pasteles, Puerto Rican sancocho, fruit cocktail, prepared coconut, and flan custard" | June 26, 1973 |
| GOYA* | 2,502,127 | IC 29: "processed fruits and vegetables; dried fruits and vegetables; meats; seafood and fish; applesauce and cranberry sauce; processed olives; dried corn husks; snack foods, namely, plantain chips, potato chips, yucca chips and pork rinds; processed nuts and processed edible seeds; jams, jellies and fruit preserves; pickles; processed garlic, processed artichokes; processed pimentos; tomato paste; processed hot peppers; soups; meat extracts, and bouillon; edible oils and fats; prepared entrees consisting primarily of meat, poultry, fish or vegetables; milk; cheese; and lard" | October 30, 2001 |
| GOYA* | 3,570,054 | IC 29: "applesauce; artichoke paste; bouillon; cheese; cheese food; chili; cranberry sauce; dairy products excluding ice cream, ice milk and frozen yogurt; dried fruit and vegetables; dried fruit mixes; dried fruits; dried meat; edible fats; edible oils; fish; fish croquettes; frozen fruits; frozen vegetables; fruit paste; fruit preserves; fruit-based snack food; instant or pre-cooked soup; jams; lard; meat; meat extracts; milk; olive oil; pickled vegetables; pork; pork rinds; poultry; preserved fruits; processed artichokes; processed coconut; processed meat; processed olives; processed vegetables; seafood; snack mix consisting primarily of processed fruits, processed | February 3, 2009 |

---

[1] Note that [*] denotes the registration is incontestable pursuant to 15 U.S.C. § 1065.

| Mark | Reg. No. | Selected Goods | Date of Registration |
|---|---|---|---|
| | | nuts and/or raisins; soups; vegetable chips; vegetable oils; vegetable-based snack foods; vegetable, fish, and meat croquettes" IC 30: "alimentary paste; bakery desserts; bakery goods; barbecue sauce; burritos; candy; capers; chocolate; chocolates and chocolate based ready to eat candies and snacks; cocoa; coffee; corn fritters; custards; dumplings; empanadas; enchiladas; fajitas; fish dumplings; flour; food seasonings; frozen confections; grain-based food beverages; grain-based snack foods; hominy; honey; hot sauce; marinades; mixes for bakery goods; mixes for making batter for hushpuppies; mixes for making batters for fried foods; noodles; pastries; pepper; picante sauce; rice; rice-based snack foods; salsa; sauces; seasoned coating for meat, fish, poultry; seasoned coating mixtures for foods; seasonings; snack cakes; spices; taco chips; tacos; tamales; tapioca; tomato sauce; tortilla chips; tortillas; vinegar; wine vinegar"<br><br>**IC 32:** "fruit nectars; fruits drinks and fruit juices; nonalcoholic malt beverage; soft drinks; syrups for making soft drinks; vegetable juice" | |
| GOYA* | 1,354,559 | **IC 32:** "malta, namely a non-alcoholic malt beverages" | August 13, 1985 |

30.     Attached hereto as **Exhibit 1** are true and correct copies of the registration certificates for the GOYA Marks listed in Table 1, above.

31.     The foregoing registrations are valid and subsisting and all of the marks reflected therein have been used by Plaintiff in interstate commerce since a time prior to the filing date of the GAYA Application and prior to any use of the GAYA Mark by Defendant.

32.     The federal registrations identified above provided, at the very least, constructive notice to Defendant of Plaintiff's rights in and to the GOYA Marks. Given Plaintiff's longstanding and widespread use of the famous GOYA Marks, it is likely that Defendant had knowledge of Plaintiff's senior rights at the time of filing of the GAYA Application.

33.     Defendant had constructive knowledge of Plaintiff's senior rights in the GOYA Marks at the time Defendant filed the GAYA Application as a result of Plaintiff's longstanding registered rights.

## II.     Procedural Background

34.     On or about March 24, 1993, third-party T.J. Luce Company, Inc. filed a trademark application for GAYA MEXICAN VANILLA in Class 30 for "Mexican Vanilla." *See* USTM Application No. 74/371,242.

35.     On or about November 3, 1994, Goya instituted an opposition proceeding No. 95114 in response to the GAYA MEXICAN VANILLA Application No. 74/371,242.

36.     On or about January 17, 1995, following a settlement agreement with Goya, (the "1995 Settlement Agreement"), third-party T.J. Luce Company, Inc. filed an express abandonment of the GAYA MEXICAN VANILLA, Serial No. 74/371,242.

37.     On or about May 31, 1995, the TTAB terminated Goya's Opposition, and the GAYA MEXICAN VANILLA, Serial No. 74/371,242, was deemed abandoned.

## III.     Defendant's Unlawful Conduct

### A.     Defendant's Use of GAYA as a Trademark and the GAYA Application.

38.     Without Plaintiff's authorization or approval, Defendant filed an application to register the mark GAYA on June 16, 2021, Serial No. 90/777,590, and claimed a date of first use in commerce of January 2016 for the Vanilla Goods (the "GAYA Application").

39.     Defendant sells products under the GAYA Mark. The specimen submitted by Defendant in connection with the GAYA Application is an image of an Amazon.com webpage offering PURE VANILLA EXTRACT FROM MEXICO in a bottle, with prominent use of the GAYA Mark, sold under the brand "GAYA VAI-MEX." *See* Figure 2, below.

https://www.amazon.com/Vanilla-Extract-Mexico-8-04oz-250ml/dp/B002CSMXEE/ref=sr...   6/15/2021

**Figure 2:** Specimen submitted June. 16, 2021 in the application of U.S. trademark 90/777,590 for "GAYA"



**Figure 3:** Expanded view of product available at Amazon on September 12, 2023:
https://www.amazon.com/Vanilla-Extract-Mexico-8-04oz-250ml/dp/B002CSMXEE/ref=sr_1_5?crid=24NUT1L2VBBYN&keywords=gaya+mexican+vanilla&qid=1694557487&sprefix=gaya+v%2Caps%2C89&sr=8-5

40.     On information and belief, Defendant also uses the website <www.gayaimports.com> to advertise, market, promote and sell her goods in the United States.

41.     On information and belief, Defendant also uses GAYA as a trade name on her Facebook and Amazon pages to promote and advertise her business and products.  Attached hereto as **Exhibit 2** are true and accurate screenshots from Defendant's website, Facebook and Amazon pages, respectively, showing Defendant's use of the GAYA Mark.  Indeed, Defendant has named

each of these pages using the "GAYA" designation and use the "GAYA" designation throughout. *See* **Exhibit 2**.

42.     The GOYA Marks are virtually identical to the GAYA Mark in sight and sound in that both marks contain the same number of letters and are pronounced highly similarly. Because both GOYA and GAYA are Spanish surnames, the marks also create a highly similar overall commercial impression.

43.     Defendant's GAYA Application for the GAYA Mark covers goods that are closely-related and complementary to the goods covered in the federal registrations for the GOYA Marks (including spices; seasonings; confectionaries; snacks; and cookies) in that the Vanilla Goods are similarly used for cooking and baking, *i.e.*, for flavoring, and are often ingredients in cookies and snacks.

44.     Additionally, the parties' respective goods are be sold in the same channels of trade (*e.g.*, through online stores like Amazon.com) to the same classes of consumers.

45.     Fully aware of Plaintiff's rights and famous GOYA brand, Defendant has acted and continues to act knowingly, willfully, and in reckless disregard of those rights.

46.     As of the filing of this Complaint, however, Defendant is still using the GAYA Mark in connection with her goods and services, despite Goya opposing the GAYA Application.

47.     Defendant does not have, and never has had, authority or permission from Goya to make use of the GAYA Mark in connection with the Vanilla Goods.

48.     Defendant intends by her unauthorized use of the GAYA Mark to trade off the goodwill of Goya's business.

**IV.     Goya's Efforts to Resolve this Matter**

49.     On or about November 10, 2022, counsel for Goya sent counsel for Defendant an email enclosing the 1995 Settlement Agreement and related correspondence between Plaintiff and T.J. Luce Company, Inc.

50.     In that same November 10, 2022, email, counsel for Goya noted that T.J. Luce Company, Inc. used a crest logo on its products that is virtually identical to the logo that appears

on the specimens submitted by Defendant in connection with the GAYA Application.  Counsel for Defendant addressed the November 10, 2022, email in a phone call in which he claimed that his client had no affiliation with T.J. Luce Company, Inc., the prior application for GAYA MEXICAN VANILLA, or the 1995 Settlement Agreement between T.J. Luce Company, Inc. and Plaintiff

51.     On May 4, 2023, counsel for Plaintiff followed up with counsel for Defendant and indicated that although Defendant claimed no affiliation with T.J. Luce Company, Inc., the prior application for GAYA MEXICAN VANILLA, or the 1995 Settlement Agreement between T.J. Luce Company, Inc. and Plaintiff, Defendant should have determined through reasonable diligence in assessing whether to adopt the GAYA Mark in the United States that Plaintiff has previously objected to the nearly identical mark for the same goods as are covered by Defendant's GAYA Application.

52.     Also on May 4, 2023, counsel for Plaintiff further reminded Defendant's counsel that Plaintiff's previous objections are of public record with the United States Patent and Trademark Office, the fact of which calls into question Defendant's good faith in proceeding with using and filing of an application for the GAYA Mark in the United States.

53.     In closing, on May 4, 2023, Plaintiff requested that Defendant immediately and permanently cease use of the GAYA Mark in the United States, immediately withdraw U.S. trademark application Serial No. 90/777,590 and agree moving forward not to use, or file future applications to register, the GAYA Mark or any mark that is confusingly similar to GOYA in connection with or any other food or beverage products.

54.     To date, Defendant has not responded to counsel for Plaintiff's May 4, 2023, cease and desist letter. Defendant has not withdrawn the GAYA Application, and Defendant continues to use the GAYA Mark.

55.     Accordingly, and for all of the reasons articulated above and below, Plaintiff brings this lawsuit to eliminate the confusion that Defendant has likely caused, and is likely to continue to cause, by using her infringing GAYA Mark in United States commerce to advertise, market, promote, offer for sale, and sell her Vanilla Goods.

## V.      Injury to Plaintiff and the Public

56.      Defendant's use and/or registration of the GAYA Mark in the United States is likely to cause confusion or mistake in the minds of the relevant purchasing public and to lead the public and prospective purchasers to erroneously assume, and thus be misled or deceived, to believe that the goods offered by Defendant under the GAYA Mark are those of Goya and/or are endorsed by, licensed by, sponsored by or otherwise affiliated or connected with Goya; or that the GOYA Marks and/or Goya's goods and/or services are associated with Defendant, all to the irreparable damage and injury of Goya and the purchasing public.

57.      Defendant's acts, described above, are likely to damage, and have damaged and irreparably injured, Plaintiff and its famous GOYA Marks, and the goodwill associated therewith.

58.      Defendant's acts, described above, are likely to irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

### FIRST CLAIM FOR RELIEF
### (Trademark Infringement Under Section 32(1) of the
### Lanham Act, 15 U.S.C. §1114(1))
### (Infringement of Plaintiff's Registered GOYA Marks)

59.      Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 58 of this Complaint.

60.      This First Claim for Relief is for federal trademark infringement under 15 U.S.C. § 1114(1).

61.      Plaintiff has the exclusive right for each of the federally registered GOYA Marks in United States commerce for, *inter alia*, spices; seasonings; confectionaries; snacks; and cookies, and related products.

62.      Plaintiff's exclusive rights in and to each of the GOYA Marks predate any rights that Defendant could establish in and to the GAYA Mark.

63.      The GOYA Marks are all inherently distinctive.

64.      Defendant is using the GAYA Mark in interstate commerce to advertise, promote, market and sell her Vanilla Goods.

65.     The Vanilla Goods that Defendant is advertising, marketing, promoting, offering for sale, and/or selling under her GAYA Mark appeals to the same customers as customers of spices; seasonings; confectionaries; snacks; and cookies that Plaintiff offers under its GOYA Marks.

66.     Defendant is using the same and/or nearly identical trade channels to advertise, market, promote, offer for sale, and sell her Vanilla Goods under the GAYA Mark that Plaintiff uses to advertise, market, promote, offer for sale, and sell its spices; seasonings; confectionaries; snacks; and cookies under its GOYA Marks (*e.g.*, through online stores like Amazon.com).

67.     Defendant's use of the GAYA Mark in interstate commerce on, for, and/or in connection with the advertising, marketing, promotion, offering for sale, and/or sale of products, as alleged herein, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant is a licensee, authorized distributor, and/or an affiliate of Plaintiff; and/or whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with Plaintiff and/or products that Plaintiff offers under its GOYA Marks.

68.     Plaintiff has not consented to Defendant's use of the GAYA Mark for any purpose, and Defendant's use of the GAYA Mark is without permission from Plaintiff.

69.     On information and belief, Defendant was aware of Plaintiff's superior rights in and to its GOYA Marks before and when Defendant adopted and began using the GAYA Mark.

70.     On information and belief, Defendant has undertaken these actions willfully and with the intent to cause confusion, mistake and deception on the part of the public.

71.     On information and belief, Defendant adopted and uses the GAYA Mark in furtherance of her willful and deliberate plan to trade upon the extensive consumer goodwill, reputation, and commercial success of products that Plaintiff offers under its GOYA Marks.

72.     Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

73.     On information and belief, Defendant has made, and will continue to make, substantial profits and gain from her use of the GAYA Mark to which Defendant is not entitled at law or in equity.

74.     Defendant's actions have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Goya's business reputation and goodwill as well as public confusion and substantial and irreparable harm to the public for which there is no adequate remedy at law.

75.     Defendant's conduct has substantially damaged the value of the GOYA Marks and caused Goya to suffer damages in an unascertainable amount.

76.     By reason of the foregoing, Goya is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

77.     Pursuant to 15 U.S.C. § 1117, Goya is entitled to recover actual damages, treble damages, Defendant's profits, the costs of the action, and attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(Trademark Infringement Under Section 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a))**
**(Infringement of the Family of GOYA Marks)**

78.     Plaintiff repeats and incorporates by references the statements and allegations in paragraphs 1-77 of the Complaint as though fully set forth herein.

79.     This Second Claim of Relief is for federal trademark infringement under 15 U.S.C. § 1125(a).

80.     Upon information and belief, Defendant's use of the GAYA Mark, as alleged herein, infringes each mark within Plaintiff's Family of GOYA Marks in violation of 15 U.S.C. § 1125(a)(1)(A).

81.     Plaintiff has suffered, and will continue to suffer, irreparable harm form Defendant's acts and conduct complained of herein, unless restrained by law.

82.     Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
**(Unfair Competition, False Endorsement, False Association, and
False Designation of Origin Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))
(Use of Defendant's GAYA Mark)**

83.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1-82 of the Complaint as though fully set forth herein.

84.     This Third Claim of Relief is for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

85.     Plaintiff has the exclusive right to the GOYA Marks in United States commerce for various food products, including, *inter alia*, spices; seasonings; confectionaries; snacks; and cookies.

86.     Plaintiff's exclusive rights in and to the GOYA Marks predate rights that Defendant could establish in the GAYA Mark.

87.     The GOYA Marks are inherently distinctive.

88.     Defendant is using the GAYA Mark, which is confusingly similar to the GOYA Marks, to manufacture, distribute, advertise, market, promote, offer for sale, and/or sell the Vanilla Goods.

89.     Defendant's Vanilla Goods and the goods covered by the numerous federal registrations for the GOYA Marks appeal to overlapping customer bases, namely, members of the general public that engage in cooking and baking, because the goods covered by Plaintiff's GOYA registrations (spices; seasonings; confectionaries; snacks; and cookies) include many goods that are complementary to the Vanilla Goods, which complementary goods are all commonly used in cooking and baking as flavorings.

90.     Consumers encounter Defendant's goods and the goods covered by the federal registrations for the GOYA Marks in overlapping and, in some cases, identical trade channels.

91.     Defendant's use of the GAYA Mark in interstate commerce in connection with the Vanilla Goods is likely to cause significant consumer confusion and to deceive consumers as to

the affiliation, connection, approval, sponsorship or association of Plaintiff and/or its goods and services, on the one hand, with Defendant and/or her goods, on the other.

92.     Goya has not consented to Defendant's actions.

93.     Based on the federal registrations of the GOYA Marks and Goya's use of the same, Defendant had actual and constructive knowledge of Goya's superior rights in and to the GOYA Marks prior to Defendant's adoption and use of the GAYA Mark, and Defendant continues to use the GAYA Mark with actual knowledge of her infringing conduct.

94.     Upon information and belief, Defendant copied, adopted, and/or uses the GAYA Mark in interstate commerce in furtherance of Defendant's willful and deliberate scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of the products offered under the GOYA Marks in interstate commerce, to which Defendant is not entitled at law or in equity.

95.     Upon information and belief, Defendant's use of the GAYA Mark, as alleged herein, constitutes unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

96.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complied of herein, unless restrained by law.

97.     Plaintiff has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
**(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))**
**(Dilution of the Famous GOYA Marks)**

98.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1-97 of the Complaint as though fully set forth herein.

99.     This Fourth Claim for Relief is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

100.    Goya owns the registered and incontestable GOYA Marks in the United States for use on and in connection with, *inter alia*, spices; seasonings; confectionaries; snacks; and cookies, and related products.

101.    Goya's ownership of, and exclusive rights in and to, the GOYA Marks, predates any rights that Defendant could establish in and to any mark that consists of GOYA in whole and/or in part.

102.    For the reasons alleges, *supra*, the GOYA Marks are inherently distinctive and are famous.

103.    Plaintiff's GOYA Marks were famous before Defendant began using the GAYA Mark in United States commerce to advertise, market, promote, offer for sale, and/or sell the Vanilla Goods.

104.    Defendant's use of the GAYA Mark to advertise, market, promote, offer for sale, and/or sell the Vanilla Goods is likely to dilute the distinctive quality of Plaintiff's famous GOYA Marks, such that the established selling power and value of Plaintiff's famous GOYA Marks will be whittled away.

105.    Defendant's use of the GAYA Mark to advertise, market, promote, offer for sale, and/or sell the Vanilla Goods is likely to dilute the distinctive quality of Plaintiff's famous GOYA Marks, such that the famous GOYA Marks' ability to exclusively identify Plaintiff as the source of goods and services under the famous GOYA Marks, will be whittled away.

106.    Defendant's use of the GAYA Mark to advertise, market, promote, offer for sale, and/or sell the Vanilla Goods is likely to dilute the reputation of Plaintiff and goods and services offered under Plaintiff's famous GOYA Marks, such that the Plaintiff's ability to indicate the superior quality of goods and services offered under the famous GOYA marks will be whittled away.

107.    Upon information and belief, Defendant uses the GAYA Mark in United States commerce as part of her willful and deliberate scheme to trade upon and profit from the extensive

consumer goodwill, reputation, commercial success, and fame of goods and services offered under Plaintiff's distinctive and famous GOYA Marks.

108.    GOYA has not consented to Defendant's use of the GAYA Mark for any purpose.

109.    Upon information and belief, Defendant's use of the GAYA Mark, as alleged herein, dilutes Plaintiff's famous GOYA Marks in violation of 15 U.S.C. § 1125(c).

110.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

111.    Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**(Trademark Infringement Under 6 N.J. STAT. ANN. § 56:4-1)**
**(Infringement of Plaintiff's GOYA Marks)**

112.    Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 111 of this Complaint.

113.    This Fifth Claim for Relief is a claim for trademark infringement under N.J. STAT. ANN. § 56:4-1.

114.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of N.J. STAT. ANN. § 56:4-1.

115.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

116.    Plaintiff has no adequate remedy at law.

117.    Defendant's uses, without Plaintiff's consent, of reproductions, copies, or colorable imitations of Plaintiff's federally registered GOYA Marks in connection with the sale, offering for sale, distribution, or advertising of goods in a manner likely to cause consumer confusion, mistake, and/or deception as to the source or origin of Defendant, her marks, and/or her products, constitute trademark infringement under N.J. STAT. ANN. § 56:4-1, et seq.

118.    Defendant has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## SIXTH CLAIM FOR RELIEF
### (Unfair Competition Under 6 N.J. Stat. Ann. § 56:4-1)
### (Use of Defendant's GAYA Mark)

119.    Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 118 of this Complaint.

120.    This Sixth Claim for Relief is a claim for unfair competition under N.J. Stat. Ann. § 56:4-1.

121.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition in violation of N.J. Stat. Ann. § 56:4-1.

122.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

123.    Plaintiff has no adequate remedy at law.

124.    Defendant's uses, without Plaintiff's consent, of reproductions, copies, or colorable imitations of Plaintiff's federally registered GOYA Marks in connection with the sale, offering for sale, distribution, or advertising of goods in a manner likely to cause consumer confusion, mistake, and/or deception as to the source or origin of Defendant, her marks, and/or her products, constitute unfair competition under N.J. Stat. Ann. § 56:4-1, et seq.

125.    Defendant has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## SEVENTH CLAIM FOR RELIEF
### (Trademark Dilution Under 6 N.J. Stat. Ann. § 56:3-12.20)
### (Dilution of the Famous GOYA Marks)

126.    Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 125 of this Complaint.

127.    This Seventh Claim for Relief is for trademark dilution under N.J. Stat. Ann. § 56:3-12.20.

128.    Upon information and belief, Defendant's use of the GAYA Mark, as alleged herein, dilutes Plaintiff's famous GOYA Marks in violation of N.J. Stat. Ann. § 56:3-12.20.

129.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

130.   Plaintiff has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF
### (Trademark Infringement Under New Jersey Common Law)
### (Infringement of Plaintiff's GOYA Marks)

131.   Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 130 of this Complaint.

132.   This Eighth Claim for Relief is for trademark infringement under New Jersey law.

133.   Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of New Jersey common law.

134.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

135.   Plaintiff has no adequate remedy at law.

136.   Defendant's uses, without Plaintiff's consent, of reproductions, copies, or colorable imitations of Plaintiff's federally registered GOYA Marks in connection with the sale, offering for sale, distribution, or advertising of goods in a manner likely to cause consumer confusion, mistake, and/or deception as to the source or origin of Defendant, her marks, and/or her products, constitute trademark infringement under New Jersey common law.

137.   Defendant has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## NINTH CLAIM FOR RELIEF
### (Unfair Competition under New Jersey Common Law)
### (Use of the GAYA Mark)

138.   Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 137 of this Complaint.

139.    This Ninth Claim for Relief is for trademark infringement and unfair competition under New Jersey common law.

140.    Defendant's actions, as described above, are likely to cause confusion, to cause mistake, and/or to deceive as to the origin, sponsorship, or approval of Defendant, her products, and/or her commercial activities by or with Plaintiff, and thus constitute, false designation of origin, passing off, and unfair competition under New Jersey common law.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in its favor and against Defendant as follows:

1.    An Order declaring that each mark within Plaintiff's Family of GOYA Marks is inherently distinctive;

2.    An Order declaring that Plaintiff's GOYA Marks are famous;

3.    An Order sustaining Plaintiff's opposition against the GAYA Application, and refusing registration to Defendant;

4.    An Order declaring that Defendant is infringing Plaintiff's GOYA Marks under federal law and/or state law, as detailed above;

5.    An Order declaring that Defendant's use and/or application to register the GAYA Mark infringes Plaintiff's GOYA Marks and constitutes unfair competition under federal and/or state law, as detailed above;

6.    An Order declaring that Defendant's conduct, as alleged herein, constitutes trademark dilution under federal and/or state law, as detailed above;

7.    An Order declaring that the acts complained of herein constitute willful infringement of the GOYA Marks;

8.      A permanent injunction enjoining Defendant and all persons in active concert or participation with Defendant:

      a. From using, registering, or seeking to register the GAYA Mark in any form, including in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to the GOYA Marks;

      b. From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant is/are associated or connected in any way with Goya or sponsored by or affiliated with Goya in any way; and,

      c. From assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in this paragraph 9 and its subparts.

9.      An Order directing Defendant to destroy all products, packaging, signage, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain or bear the GAYA Mark, or any other marks, logos, designs, designations, or indicators that are confusingly similar to Plaintiff's GOYA Marks;

10.      An Order directing that, within thirty (30) days after the entry of the injunction, Defendant file with this Court and serve on Plaintiff's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

11.      An order declaring that Defendant's conduct, as alleged herein, is "exceptional" within the meaning of 15 U.S.C. § 1117.

12.     An Order requiring Defendant to account for and pay to Goya any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws;

13.     An Order requiring Defendant to pay Goya damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

14.     An Order requiring Defendant to pay Goya all of its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

15.     An Order requiring Defendant to pay Goya punitive damages for trademark infringement and unfair competition under New Jersey common law;

16.     An Order awarding Plaintiff pre-judgment and post-judgment interest against Defendant; and,

17.     Such other relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Goya hereby demands a trial by jury with respect to all issues and claims, asserted by any party, triable of right by a jury, in the above-captioned action.

Dated: September 14, 2023                    Respectfully submitted,

**MAYER BROWN LLP**

By: _/s/_____
Brian W. Nolan
A. John P. Mancini*
Daniel M. Rosales*
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506-2500
Fax: (212) 849-5895
*bnolan@mayerbrown.com*
*jmancini@mayerbrown.com*
*drosales@mayerbrown.com*
(*pro hac vice motion to be submitted)

*Attorneys for Goya Foods, Inc.*